J. Kent Rutledge, #5-1392
Peter F. Howard, #5-5325
Lathrop & Rutledge, P.C.
1920 Thomes Ave., Suite 500
P.O. Box 4068
Cheyenne, WY  82003-4068

Marc R. Brosseau
Chad Lieberman
Brosseau Bartlett Seserman, LLC
6455 South Yosemite Street, Suite 750
Greenwood Village, CO  80111

Colin P. Smith
Robert E. Tonn
Holland & Knight
131 South Dearborn Street, Suite 3000
Chicago, IL 60603

*Attorneys for Defendant Bridgestone Americas Tire Operations, LLC*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **BRIAN KEHLER** | ) |
|  | ) |
|     **Plaintiff,** | ) |
|  | ) |
|     v. | ) **Case Number 15-CV-127-J** |
|  | ) |
| **BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC; COMMERCIAL TIRE, INC.; and, JOHN DOE CORPORATIONS/ENTITIES 1-3** | ) ) ) ) |
|  | ) |
|     **Defendants.** | ) |

### BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC'S MOTION TO EXCLUDE CERTAIN OPINIONS OF PLAINTIFF'S EXPERT DENNIS RITCHIE

Defendant Bridgestone Americas Tire Operations, LLC ("BATO"), pursuant to Federal Rules of Evidence 702 and 703, hereby moves the Court to exclude certain opinions offered by Plaintiff's expert Dennis Ritchie ("Ritchie"). In support of this motion, BATO states as follows:

## I. CERTIFICATE OF CONFERRAL

Counsel for BATO has conferred both orally and via email with counsel for Plaintiff regarding this motion. Both the telephone conversation and the emails took place on August 30, 2016. BATO made reasonable good faith efforts to resolve the dispute. Per those conversations, the Plaintiff's counsel has advised that the Plaintiff opposes this motion in all respects.

## II. BACKGROUND

On March 30, 2016, the Plaintiff disclosed Dennis Ritchie as one of his retained experts [DOC. 51]. Within the disclosure, Ritchie is identified as "FedEx's trucking safety and regulatory expert" [DOC. 51, p. 3]. Within his report, Ritchie identified his expertise as confined to trucking management, corporate loss prevention, driver development, driver training and management of safety management systems and controls [DOC. 51-3, p. 2]. The assignment, as detailed within his report, was as follows:

> Case assignment was received by Attorney Loyd Smith on 10/22/15, with an understanding to examine evidence provided to I-Trans Consulting Services and determine whether the actions or inactions of Brian Kehler and/or CLR Transportation and FedEx were in compliance with applicable Federal and State laws, rules and transportation industry standards of care. [DOC. 51-3, p. 2].

For reference, this report was originally disclosed in the *Cubillos/Gooden* lawsuit by attorney Loyd Smith on behalf of FedEx Ground. The Plaintiff, Brian Kehler, merely adopted and disclosed this report in the instant matter. Ritchie's report contains opinions and conclusions that exceed both his assignment and expertise. Those opinions and conclusions relate to accident reconstruction issues, vehicle dynamics issues, human factors issues and tire science. Ritchie lacks the expertise necessary to opine upon these issues and the methodologies he employed

were both non-existent and unreliable. As detailed below, Ritchie's opinions should be excluded[1].

Additionally, on August 4, 2016, the Plaintiff filed a supplemental expert designation of Dennis Ritchie [DOC. 77] that included a supplemental report from Ritchie with the same date [DOC. 78-1, pp. 10-22]. In this report, Ritchie discusses hearsay conversations he had with six employees of various tire dealers in five different states. He reaches conclusions regarding speed ratings with respect to manufacturer warnings and the effectiveness of employee training conducted by tire retailers. Ritchie's methodology is not scientific and he has no background in speed ratings, warnings or tire retail operations. As detailed below, Ritchie's supplemental opinions should be excluded[2].

### III. LAW TO BE APPLIED

The Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), emphasized that Federal Rule of Evidence 702 requires trial courts to serve as evidentiary "gatekeepers" who must conscientiously screen expert testimony for relevance and reliability. This requires that the court ensure that such testimony constitutes "good science," (*id.,* p. 593), and that expert findings are sufficiently "derived by the scientific method" or otherwise "supported by appropriate validation." (*Id.*, p. 590).

In assessing the validity of an expert theory or technique, the Supreme Court in *Daubert* set forth a non-exclusive four factor test to be used in evaluating the admissibility of expert testimony: "(1) whether the opinion has been subjected to testing or is susceptible of such

---

[1] Attached as **Exhibit 1** is a copy of Ritchie's deposition transcript from the *Gooden/Cubillos* lawsuit. This deposition was premised upon the exact same expert report authored by Ritchie and designated by the Plaintiff in this case.

[2] Ritchie's supplemental report is the subject of a pending motion to strike [DOC. 79] that, if granted by the court, would moot this aspect of this motion.

were both non-existent and unreliable. As detailed below, Ritchie's opinions should be excluded[1].

Additionally, on August 4, 2016, the Plaintiff filed a supplemental expert designation of Dennis Ritchie [DOC. 77] that included a supplemental report from Ritchie with the same date [DOC. 78-1, pp. 10-22]. In this report, Ritchie discusses hearsay conversations he had with six employees of various tire dealers in five different states. He reaches conclusions regarding speed ratings with respect to manufacturer warnings and the effectiveness of employee training conducted by tire retailers. Ritchie's methodology is not scientific and he has no background in speed ratings, warnings or tire retail operations. As detailed below, Ritchie's supplemental opinions should be excluded[2].

### III. LAW TO BE APPLIED

The Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), emphasized that Federal Rule of Evidence 702 requires trial courts to serve as evidentiary "gatekeepers" who must conscientiously screen expert testimony for relevance and reliability. This requires that the court ensure that such testimony constitutes "good science," (*id.,* p. 593), and that expert findings are sufficiently "derived by the scientific method" or otherwise "supported by appropriate validation." (*Id.*, p. 590).

In assessing the validity of an expert theory or technique, the Supreme Court in *Daubert* set forth a non-exclusive four factor test to be used in evaluating the admissibility of expert testimony: "(1) whether the opinion has been subjected to testing or is susceptible of such

---

[1] Attached as **Exhibit 1** is a copy of Ritchie's deposition transcript from the *Gooden/Cubillos* lawsuit. This deposition was premised upon the exact same expert report authored by Ritchie and designated by the Plaintiff in this case.

[2] Ritchie's supplemental report is the subject of a pending motion to strike [DOC. 79] that, if granted by the court, would moot this aspect of this motion.

testing; (2) whether the opinion has been subjected to publication and peer review; (3) whether the methodology used has standards controlling its use and a known rate of error; [and] (4) whether the theory has been accepted in the scientific community." *Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004) (citing *Daubert*, 509 U.S. at 590).

The basic object of *Daubert* is to "ensure that the testimony has a 'basis in the knowledge and experience of' the expert's discipline and that the expert exhibits 'the same level of intellectual rigor' expected of an expert outside of the courtroom." *Multimatic, Inc. v. Faurecia Interior Sys. USA, Inc.*, 358 Fed. App. 643, 654 (6th Cir. 2009) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).  When faced with a proffer of expert testimony, the district court must determine at the outset whether the reasoning and methodology underlying the testimony satisfies the *Daubert* test and is thus "scientifically sound" and "based on facts which sufficiently satisfy Rule 702's reliability requirements." *Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004) (quoting *Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)). As the Tenth Circuit has made clear:

> [T]o be reliable under *Daubert*, an expert's scientific testimony must be . . . "ground[ed] in the methods and procedures of science" based on actual knowledge, *not "subjective belief or unsupported speculation."* In other words, "an inference or assertion must . . . be supported by appropriate validation – i.e., 'good grounds' based on what is known."

*Dodge v. Cotter Corp.* 328 F.3d 1212, 1221-22 (10th Cir. 2003) (quoting *Daubert*, 509 U.S. at 590).  "[A]ny step that renders the analysis unreliable renders the expert's testimony inadmissible." *Mitchell*, 165 F.3d at 782 (quoting *In re Paoli R.R. Yard PCB Lit*, 35 F.3d 717, 745 (3rd Cir. 1994)).

A leading decision of the Tenth Circuit notes that the purpose of the *Daubert* inquiry is always "to make certain that an expert . . . employs in the courtroom the same level of

intellectual rigor that characterizes the practice of an expert in the relevant field." *Dodge*, 328 F.3d at 1223 (quoting *Kumho Tire*, 526 U.S. at 152). In performing its evaluation, the district court generally should focus on the expert's methodology; however, the expert's ultimate conclusions are not immune from scrutiny, either. *Dodge*, 328 F.3d at 1222. "A court may conclude that there is simply too great an analytical gap between the data and the opinion offered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). As the Court explained in *Joiner*, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Id.*; *see also Dodge*, 328 F.3d at 1223 (recognizing that the *ipse dixit* of the expert is insufficient foundation for an admissible opinion).

IV. **ARGUMENT**

    a. **Accident Reconstruction**

The scientific field of accident reconstruction involves the analysis of the speed and movement of vehicles throughout a crash sequence. The Plaintiff previously designated Dr. Jerry Ogden, an accident reconstructionist, and not Ritchie to opine on these issue [DOC. 51] Although Ritchie is not an accident reconstructionist and was never designated as such, Ritchie offers accident reconstruction related opinions regarding the speed and movement of the subject vehicle [DOC. 51-3, pp. 14, 15, 17, 18]. He offers opinions that the tractor went left and the trailers "whipped to the right." *Id.* He offers opinions related to how and when the fender of the tractor detached, the distance of travel, and alleged rim gouging on the road. *Id*.

Ritchie is not a qualified expert in accident reconstruction. He has previously admitted that he is not an expert in the field of accident reconstruction. *Ritchie depo., pp. 14, 103, 272.*

His background is primarily in trucking operations [DOC 51-3, p. 4]. He lacks the qualifications necessary to opine upon accident reconstruction-related issues in this case.

Likewise, Ritchie's methodology is non-existent and unreliable. Ritchie previously admitted that he did not reconstruct the subject crash. *Ritchie depo., pp. 15, 272, 294*. He does not know the movements of the vehicles involved in the subject crash. *Ritchie depo., pp. 275, 276*. He did not attempt to identify tire marks in the subject crash. *Ritchie depo., pp. 278, 279*. He did not study the scene to make determinations such as braking or steering. *Ritchie depo., p. 94*. He has never inspected the vehicles involved in the crash. He has done nothing that is scientific, testable, reliable or generally accepted within the accident reconstruction community. His opinions in this regard are nothing more than speculative arguments.

b. **Vehicle Dynamics**

The scientific field of vehicle dynamics involves the analysis of how the physics involved with a tire failure effect the controllability and movements of the vehicle. The Plaintiff previously designated Dr. Jerry Ogden, and not Ritchie, to opine on these issues [DOC. 51]. Although Ritchie is not a vehicle dynamics expert and was never designated as such, Ritchie offers opinions about the controllability of the vehicle, including the effect of a disabled tire on a tractor, an issue with the "front axle mechanical parts," driver braking inputs and a "whipping" motion from the double trailers [DOC 51-3, pp. 14, 15, 17, 18]. Ritchie concludes that the tire failure caused the crash and Kehler was unable to control the vehicle [DOC 51-3, pp. 17, 18].

Ritchie is not a qualified expert in vehicle dynamics. He has previously admitted that he is not an expert in vehicle dynamics. *Ritchie depo., pp. 15, 272*. He admitted that he has no independent opinion with respect to the vehicle dynamics of the subject crash. *Ritchie depo., pp. 92, 273*. Rather, he defers to the dynamics opinions of other experts with respect to the cause of

the subject crash. *Ritchie depo. pp. 92, 93, 273, 296*. When asked about this report, he clarified that he had no opinion as to whether the subject vehicle was controllable during the accident sequence. *Ritchie depo., pp. 279, 297*. He testified that he is not offering any opinions with respect to the controllability of the subject vehicle. *Ritchie depo., p. 279, 280*. He admitted that he cannot say what would have happened in the accident sequence had Kehler responded differently than reported because he lacks the experience, training and background to opine on that issue. *Ritchie depo., p. 298*. He admitted that he has no opinion related to Plaintiff's expert Jerry Ogden's controllability theory regarding a mechanical failure in the front axle mechanical parts. *Ritchie depo., p. 350*. He does not even know if Ogden's hypothesis is feasible. *Ritchie depo., p. 350*.

Likewise, Ritchie's methodology is non-existent and unreliable. He has never read any literature on the vehicle dynamics involved in a steer axle tire failure. *Ritchie depo., pp. 95, 104*. He admits he is speculating when discussing whether "something is going to happen that will pull the truck left" in the event of a steer axle tire failure. *Ritchie depo., p. 95*. He has never conducted any tests with respect to a steer axle tire failure. *Ritchie depo., p. 104*. He has done nothing that is scientific, testable, reliable or generally accepted within the vehicle dynamics community. His opinions in this regard are nothing more than speculative arguments.

    c. **Human Factors**

The scientific field of human factors involves an analysis of human response to various stimuli – including perception/reaction times. Ritchie is not an expert in human factors and was never designated as an expert intended to discuss those issues. However, Ritchie offers human factors related opinions regarding perception/reaction times of Kehler. He opines that an attentive driver requires 1.5 seconds in which to perceive and react to an emergency situation

[DOC. 51-3, p. 15]. He opines that Kehler was traveling at 75 mph, equating to 110 feet per second and had only "170 feet after the blowout before he had time to act" [DOC. 51-3, p. 15].

Ritchie is not a qualified expert in human factors. He has previously admitted that he is not an expert in human factors. *Ritchie depo., p. 16*. He admitted he has no background in human factors and has never studied the subject. *Ritchie depo., p. 290*. He is unaware of any authoritative literature or studies on the subject. *Ritchie depo., p. 291*. He has never taken any courses in human factors. *Ritchie depo. p. 291*.

Likewise, Ritchie's methodology is non-existent and unreliable. His opinion is based solely on what is discussed in a commercial driver's license manual. *Ritchie depo., p. 290, 291*. He has not analyzed, nor can he, whether the tire failure in this case is an expected or unexpected event as defined within the subject of human factors. *Ritchie depo., pp. 291, 292*. He does not know where the tire failure occurred and thus cannot say whether his perception/reaction analysis is accurate. *Ritchie depo., pp. 292, 293*. He has done nothing that is scientific, testable, reliable or generally accepted within the human factors community. His opinions in this regard are nothing more than speculative arguments.

  d. **Tire Science**

Tire science involves tire design, manufacture and failure analysis. The Plaintiff previously designated Dennis Carlson to opine on these issues [DOC. 57]. Although Ritchie is not a tire science expert and was never designated as such, Ritchie offers opinions[3] about that the tire failure was a "blowout" and calls the failure a "nightmare" and "catastrophic" [DOC. 51-3, p. 17]. Ritchie is not a qualified expert in tire design, manufacture or failure. He admits he has

---

[3] Ritchie's opinion directly contradicts Plaintiff's tire expert Dennis Carlson's opinion regarding the nature of the failure. Dennis Carlson expressly opined that "[t]he subject tire failed by a partial belt to belt separation" [DOC 58-1, p. 3].

no opinion as to the failure mode of the subject tire.  *Ritchie depo., pp. 91-92*.  He admits he is not an expert in tire design, tire manufacture or tire failure.  *Ritchie depo., p. 92*.

Ritchie's methodology is non-existent and unreliable.  He has not examined the tire or analyzed the cause of the failure – nor could he.  In fact, he admits he has no opinion as to why the tire failed.  *Ritchie depo., p. 94*.  He has done nothing that is scientific, testable, reliable or generally accepted within the tire science community.  His opinions in this regard are nothing more than speculative arguments.

      **e.  Ritchie's Supplemental Report**

Ritchie has no background or experience with warnings or tire speed ratings.  Ritchie testified that he was not familiar with speed ratings and would not offer any opinions related thereto.  *Ritchie depo., p. 237*.  Ritchie has no background or experience with retail operations or the relationship between manufacturers and retailers.  He has never published, studied, or tested anything related to these issues.  Beyond his inherent lack of qualifications, his methodology is not scientific.

Ritchie's supplemental report contains the entirety of his methodology:  he called six tire retailers in five states, spoke to an employee and asked general questions about speed ratings.  Nearly all of these conversations failed to include a discussion about the subject make and model tire, the Bridgestone R283 14-ply.  Below is a summary of Ritchie's conversations:

- Jeff, a sales representative for Jack's Tire and Oil in Arizona, spoke with Ritchie about a unspecified Michelin tire and stated that tire manufacturers have a "default speed limit of 75 mph."

- Alecia, a customer service representative for the Michelin Customer Service Center in North Carolina, spoke with Ritchie about a Michelin XZA-2 Energy steer tire and instructed Ritchie not to drive over the tire's 75 mph speed rating.

- Victor, the shift leader at Loves Travel Stop #659 in Arizona, spoke with Ritchie and stated that a Bridgestone tire's speed rating of 75 mph could be exceeded while in operation.

- Jake, an employee of Art's Truck Repair in Wyoming, spoke with Ritchie bout a B.F. Goodrich tire and was unaware of speed ratings.

- Charlene, an employee of Travel Centers of America in Nevada, spoke with Ritchie about how she was unaware of speed ratings, but believed the Bridgestone R283 tire could be operated within any speed limit in Nevada[4].

- Jerry, the shop manager for Sapp Brothers Travel Center in Nebraska, spoke with Ritchie about a Michelin X-Line Energy Z tire with a speed rating of 75 mph.

From these six conversations, Ritchie opines that tire manufactures are not properly warning and educating their tire retailers about speed ratings. Ritchie also opines that tire manufacturers and retailers have a duty to inform customers of the risks of exceeding the speed ratings of tires. Ritchie's methodology is devoid of any scientific basis or methodology. He merely summarizes the hearsay thoughts of six unknown employees in a transparent attempt to advocate for the Plaintiff. Ritchie does not consider nor cite to any evidence or testimony in this case to support his opinions. Ritchie has not considered any materials from either BATO or Commercial Tire related to warnings, speed ratings, education and operations. Ritchie has not considered the testimony from anyone.

Ritchie's opinions are not based on any special knowledge, skill, experience, training or education. Ritchie's opinions are not based upon sufficient facts or data. Ritchie did not follow any reliable principles and methods and has not applied any such principles or methods to the facts in this case. Ritchie's testing, to the extent you can call his six phone calls a test, is woefully inadequate. Needless to say, the test methodology has not been peer reviewed, the error rates are off the charts, and there is no evidence the methodology is accepted in the relevant scientific communities of warnings, manufacturing and retail operations. Ritchie's supplemental

---

[4] The maximum speed limit in Nevada is 75 mph. http://www.speed-limits.com/nevada.htm.

opinions based upon his hearsay conversations with six individuals with unknown backgrounds and education should be excluded. This is not science, this is advocacy.

## V.   CONCLUSION

For the reasons outlined above, Ritchie is not qualified and did not employ the requisite methodologies to opine upon accident reconstruct issues, vehicle dynamics issues, human factors issues, tire science issues, speed rating issues, warnings issues and tire retail operations. For these reasons, Ritchie's opinions should be excluded under F.R.E. 702, 703 and *Daubert*. A proposed order has been submitted with this motion.

Respectfully submitted,

*/s/ Chad Lieberman*

Marc R. Brosseau
Chad Lieberman
Brosseau Bartlett Seserman, LLC
6455 S Yosemite St, Suite 750
Greenwood Village, CO 80111
Telephone:  303-812-1200
mbrosseau@bbs-legal.com
clieberman@bbs-legal.com

J. Kent Rutledge
Peter F. Howard
Lathrop & Rutledge, P.c.
1920 Thomes Ave., Suite 500
Cheyenne, WY 82003-4068
Telephone - (307) 632-0554

Colin P. Smith
Robert E. Tonn
Holland & Knight
131 South Dearborn Street, Suite 3000
Chicago, IL 60603
(312) 578-6562

Attorneys for Defendant Bridgestone Americas Tire Operations, LLC

## **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that the foregoing document was filed and served upon the entity or entities named below via CM/ECF and/or regular U.S. mail on September 2, 2016.

Diana Rhodes
Traci Rivinus
The Rhodes Law Firm
2015 Warren Avenue
Cheyenne, WY 82001

Richard Friedman
Sean J. Gamble
Friedman/Rubin
51 University Street, Suite 201
Seattle, WA 98101

Monty L. Barnett
Grant R. Curry
White and Steele, P.C.
Dominion Towers, North Tower
600 17th Street, Suite 600N
Denver, CO 80202-5406

_____
Chad Lieberman