Diana Rhodes, #5-2734
Traci Rivinus, #6-3920
Rhodes Law Firm, LLC
2015 Warren Avenue
Cheyenne, WY 82001
Telephone: 307.634.4444
diana@drhodeslaw.com
traci@drhodeslaw.com

Sean J. Gamble, #41733
Richard H. Friedman, #30626
Friedman|Rubin
51 University Street, Suite 201
Seattle, WA 98101
Telephone: 206.501.4446
sgamble@friedmanrubin.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **BRIAN KEHLER** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case Number 15-CV-127-J |
| | ) |
| **BRIDGESTONE AMERICAS TIRE** | ) |
| **OPERATIONS, LLC, COMMERCIAL** | ) |
| **TIRE, INC., and JOHN DOE** | ) |
| **CORPORATIONS/ENTITIES 1-3** | ) |
| | ) |
| **Defendants.** | ) |

**PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANTS' MOTION TO LIMIT EXPERT TESTIMONY OF DENNIS CARLSON AND FOR RULE 104(a) HEARING**

Plaintiff, Brian Kehler, by and through her attorneys of record, files the within Brief in Response to Defendant Bridgestone Americas Tire Operations, LLC, and Commercial Tire, Inc.'s Joinder in the motion, and in support thereof, avers as follows:

Plaintiff respectfully submits that Bridgestone improperly attacks Mr. Carlson's conclusions, which is the province of the jury to weigh and decide, and unfairly impugns Mr. Carlson's methodology (which is essentially the same methodology used by Bridgestone's own tire expert, Joseph Grant). Bridgestone would have this Court believe that Mr. Carlson, who has over 46 years' experience in the study of tire failures, is somehow not qualified to testify as an expert to the matters addressed in its' motion. In the argument that follows, Plaintiff's counsel have made every effort not to file any protected information by Bridgestone, pursuant to this Court's *Protective Order*. Any and all protected materials will not be filed publicly, but will be sent to opposing counsel. Commercial Tire filed a joinder in the Bridgestone motion, and all comments and responses in Plaintiff's Response are to be included as the responses to Commercial Tire.

## I.  INTRODUCTION

Bridgestone states that Mr. Carlson's opinions related to specific opinions are not grounded in tested, reliable methodologies, and that there is no general acceptance in the tire science community for his opinions. The specific opinions addressed in Bridgestone's motion are:

1. Defects in the steel belt joints;
2. Adhesion defects evidenced by liner pattern marks;
3. Negligence in Bridgestone's warnings.

Mr. Carlson's methodologies are the same methodologies employed by all tire failure analysts, including Bridgestone's expert, Joseph Grant, and Bridgestone's former tire failure

analyst, Richard Southwell, as discussed further below.  Bridgestone's statement that there is no general acceptance in the tire science community is accepted by tire failure analysts and others, and Mr. Carlson provides the Court with ample support for his opinions in the attached Affidavit of Dennis Carlson, **Exhibit 1,** included and fully incorporated herein.  Therefore, Mr. Carlson's opinions as to the three areas of criticism by Bridgestone are methodologically sound and properly supported, as will be demonstrated further below.  That said, it is the role of the jury to weigh Mr. Carlson's conclusions at trial.

Accordingly, Bridgestone's Motion to Limit The Testimony of Dennis Carlson [hereinafter "Motion to limit"] should be DENIED.  Plaintiff hereinafter refers to Bridgestone America's Tire Operations LLC as "Bridgestone."

## II.   CARLSON'S BACKGROUBND

In its Motion to Limit Testimony, Bridgestone admits that Mr. Carlson's qualifications "are not directly in issue," (Motion to Limit, P. 2).  Bridgestone then spends a significant portion of its Motion attempting to undermine Mr. Carlson's qualifications with what can only be characterized as a thinly veiled attempt to taint the Court's view of Mr. Carlson before considering the merits of his opinions. Plaintiff is, thus, forced to respond directly to each of Bridgestone's attacks.

### A.   Mr. Carlson's Qualifications

In his *Affidavit* (filed with the instant *Brief,* as **Exhibit 1**, and incorporated by reference herein), Mr. Carlson's education, training and experience is set out in detail. ¶¶ 4-15) .   Mr.

Carlson is a professional engineer, a mechanical engineer, a tire failure analyst and accident reconstructionist.

**B.    The *Kumho* Tire Case**

Numerous courts have considered Mr. Carlson's qualifications and methods and found that he is qualified, reliable and fit to offer opinion testimony on tire failure analysis, tire manufacturing defects and their likely causes, as well as design defects and safer alternative tire designs. Excerpts from these favorable court orders are provided in Mr. Carlson's *Affidavit* (Exhibit 1). A true and correct copy of these orders is attached in Mr. Carlson's *Affidavit* as Exhibit 2. Bridgestone relies heavily on the *Kumho* case in its effort to "poison the well" about Mr. Carlson. However, Bridgestone's representation that Mr. Carlson "was the tire expert whose exclusion was affirmed by the United States Supreme Court in *Kumho*" is patently false. (Motion to Limit, P. 2-3). As this Court is aware, the role of the United States Supreme Court is not to exclude trial witnesses, but instead the Court's function is to review the standards by which trial courts apply rules of evidence. That is exactly what the Court did in *Kumho*. As for the *Kumho* decision, Mr. Carlson explains:

> First, the well-known *Kumho v. Carmichael* is the only case that I am aware of where my methodology was found to be "flawed" and my testimony thereby excluded. This finding was made by the District Court approximately 20 years ago as a result of it applying a new criteria (Daubert) to my methodology, a criteria that had only been applied to nouveau scientific opinions, not engineering. This finding was subsequently overruled by the Appellate Court. The Supreme Court essentially ruled that the District Court had not abused its discretion by applying the Daubert criteria, but it did

not specify that the Daubert criteria had to be applied. Specifically, the Supreme Court noted that the area of concern was not my qualifications to render opinions but rather the specific methodology I employed in that specific case at that time to reach my conclusions on a specific tire. The *Kumho* decision was a new pronouncement by the Court concerning the expert methodology that is acceptable in Federal Courts in tire failure cases, and I have modified my own scientific method precisely to fit the requirements of *Kumho* now that I have the benefit of the Court's judgment in that case.

Since the time of United States Supreme Court decision in *Kumho* in 1999, I have testified as a tire expert at trial in approximately 45 cases and have been found qualified to testify in numerous state and federal courts as outlined above. Seven of these cases involved tread-belt separation failures of tires manufactured by Goodyear. To my knowledge, my testimony was not limited in these cases. I was also hired by the attorney generals of the 50 United States in their investigation of the Firestone Radial ATX and Wilderness AT separation problem after *Kumho*. **Exhibit 1,** *Affidavit* **¶¶ 35, 36.**

This brief puts the *Kumho* case in perspective as it relates to Dennis Carlson's current qualifications as a testifying expert for the case at bar. Explanations in response to Bridgestone's issues regarding various cases is addressed in Mr. Carlson's Affidavit, regarding the *Bringhurst v Pirelli Tire* case addressed at ¶    , the *Moore* case in ¶  , the *Seigel, Carver, Mun and Nevil* cases in ¶   ., the *Griego* case in ¶    , and the *Carr* case at ¶    .

## IV.   THE LEGAL STANDARD

Decisions about the admissibility of evidence fall within a judge's discretion. Admissibility of expert opinions are governed by Rules 403 and 702 of the Wyoming and Federal Rules of Evidence. Expert testimony which is confusing or unfairly prejudicial may be

excluded under Rule 403 of the Wyoming and Federal Rules of Evidence. Rule 702 has three major requirements: 1) the proferred witness must be an expert, i.e., must be qualified; 2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and 3) the expert's testimony must assist the trier of fact. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-42 (3rd Cir. 1994). To be admissible, the expert's testimony and opinions must be based on scientific, technical or other specialized knowledge, which the expert derives from experience, training, or education. The Judge has the discretion to determine whether the expert possesses such specialized knowledge, or is qualified to testify to the opinions.

Courts engage in a two-part analysis in determining the admissibility of expert opinion. First, the court must determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion. Second, the court must determine whether the expert's opinions are sufficiently reliable. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir.2001); Fed.R.Evid. 702; *Daubert*, 509 U.S. 579 (1993); *Kumho Tire Co.*, 526 U.S. 137 (1999).

In Wyoming, if the Court determines that an expert is qualified to render the opinion presented, a trial judge must determine reliability. A trial judge must consider *all* factors relevant to the reliability of a proposed expert's testimony, with a focus on the principles and methodology of the expert, not his or her conclusions. *Bunting v. Jamieson,* 984 P.2d 467, at 476 (Wyo. 1999). "Reliability is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid." *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1204 (10th Cir. 2002) (quotation omitted). In *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d

1193, 1205 (10th Cir. 2002), the Court noted four nonexclusive factors for assessing the reliability of an expert's methodology: 1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; 2) whether the opinion has been subjected to peer review; 3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and, 4) whether the theory has been accepted in the scientific community. F.R.E. 702 requires the expert's testimony must be "grounded in the methods and procedures of science," which is defined as "derived by the scientific method" and "supported by appropriate validation." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 54791, 113 S.Ct. 2786, 2795 L.Ed. 2d 469 (1993). Rule 702 states an expert's testimony may be considered reliable if "the testimony is based on sufficient facts or data." Fed.R.Evid. 702(b). The Court notes that under *Daubert,* a court is to find an expert opinion reliable under Rule 702 if the opinion is based on "good grounds." *In re Paoli R.R. Yard PCB Litigation,* 35 F.3d 717, 732 (3d Cir.1994). Meaning that if the opinions are based on methods and procedures of science they can be admissible regardless of whether or not the court thinks the opinions are correct, as a court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 744 (citing *Daubert,* 509 U.S. at 595).

## ARGUMENT

In liberally considering qualifications, as the Tenth Circuit requires, Plaintiff respectfully submits that Mr. Carlson meets all three Rule 702 prongs.

A.   QUALIFICATIONS

In his *Affidavit,* filed with the *Brief* as Exhibit 1, and incorporated by reference herein, Mr. Carlson addresses his qualifications in detail. Mr. Carlson is qualified as an expert in all opinions he offers in this case.

B. RELIABILITY

The principles and reasoning and methodology of Dennis Carlson as discussed in detail in his *Affidavit* as well as his reports submitted in this matter, and incorporated in his *Affidavit,* are based on scientific principles and are scientifically valid. Mr. Carlson's respectfully submits that Mr. Carlson's opinions meet the *Daubert* requirements as stated in *Bunting v. Jamieson,* 984 P.2d 467, at 476 (Wyo. 1999), and *Hollander v. Sandoz Pharm. Corp.,* 289 F.3d 1193, 1204 (10th Cir. 2002).

In his investigation and examination of the subject tire, Mr. Carlson developed a failure hypothesis in order to determine the failure mode. Belt to belt separation, which is a recognized failure mode, was Mr. Carlson's testable hypothesis. Because his findings are tested by experience, the Daubert criterion for reliability is satisfied as to method, independent of the weight of his conclusions, which are for the jury to decide.

In 2012, Dennis Carlson, with his colleague, William J. Woerhle, co-authored an SAE paper, peer-reviewed and published in a professional automotive engineering series, *SAE International,* which involved independent testing to determine whether or not road hazard impacts can cause a tire to develop belt separation failure, even later on in service, as a result of impact, and which no data supported the propensity for the tire to develop a belt separation failure.

As noted in Mr. Carlson's *Affidavit,* studies performed by Richard Southwell, former Bridgestone tire failure analyst, support the conclusions and opinions offered in this matter. Mr. Carlson's opinions have been subjected to peer review in the tire science industry, and verified. This verification weighs in favor of Mr. Carlson's reliability.

Since tire forensic investigation (especially tire failure analysis) is a qualitative, not a quantitative, method of investigation, there is no known quantifiable rate of error.

### C. GENERAL ACCEPTANCE

Mr. Carlson employed the same methodology as used by other experts, by conducting a visual and tactile examination of the subject tire, evaluating x-rays, considering the same type of tire evidence, industry sources, and peer-reviewed literature and trade publications. In his *Affidavit,* Mr. Carlson cites the opinion of the District Court judge in a prior tire defect case:

> For example, the United States District Court Judge in *Mascarenas v. Cooper Tire & Rubber Co.* noted that my methodology and techniques have long been accepted in the tire industry and concluded that my testimony would be helpful to a jury.
>
>> Visual and tactile examinations like Carlson completed are a valid and common way for tire failure experts to reach their conclusions regarding causation. Kumho, 526 U.S. at 156. Cooper's experts, and Ford's experts, use these same procedures. ... Carlson also performed diagnostic testing of the inner liner with a proscope, a type of microscope. ... Carlson x-rayed the tire and tread pieces. ... Carlson shearographed (a form of non-destructive testing) and studied the companion tires. ... Carlson performed a quantitative assessment of exemplar Cooper tires via a cross-sections analysis. ... Carlson made tire cuts of similar tires. ... Carlson reviewed a number of Cooper's documents. ... Carlson relied on testing by other experts and industry sources on radial tires, as well as expert literature on the topic. ... Carlson brought these materials to his deposition. The absence of such supporting references was remarked upon in the Supreme Court's decision in Kumho. 526 U.S. at 157. ... Carlson's techniques have long been generally accepted in the tire manufacturing industry. Under 702, an expert

> can be qualified by a combination of their knowledge, skill, experience, and training.
>
> I employed the same methodology in this case, conducting a visual and tactile examination of the subject tire, evaluating x-rays, and considering the same type of tire evidence, industry sources, and expert literature. *Affidavit,* ¶ 17.

There is no question that Mr. Carlson's methodology in performing tire failure analysis is quite standard, and is much the same as the methodology followed by Bridgestone's tire expert, Joseph Grant, even though they reached different conclusions. Those conclusions are for the jury to consider and weigh at trial.

Mr. Carlson has followed the same methodology that he was taught, practiced and perfected at Michelin. His method for investigating tire failures is used industry-wide. Prior courts have held that Mr. Carlson's method and techniques meet and satisfy *Daubert* reliability criteria.

Mr. Carlson has been involved in the tire failure analysis for nearly 40 years, from 1977 to 2016. His qualifications as an expert in tire failure analysis have been provided, in detail, in Mr. Carlson's *Affidavit*.

### MR. CARLSON'S RESPONSES TO BRIDGESTONE'S DAUBERT CHALLENGE

In his *Affidavit,* Mr. Carlson has addressed Bridgestone's other criticisms related to his opinions regarding the failure to warn of the dangers of the subject tire. Regarding the failure to warn, Mr. Carlson explains:

> "From these documents, it is apparent that the R283 tire was not designed to be driven at 75 miles per hour, much less at the speed limit of 80 miles per hour. Bridgestone

designed the subject tire to be used as a steer tire on semitractors, but designed it so that it could not be driven at a constant 75 miles per hour. Since Bridgestone knew the speed limit was at least 75 miles per hour, and in locations along the various Interstates throughout the U.S. the speed limit is 80 miles per hour, they had a duty to warn consumers of the dangers associated with driving these tires at or over 75 miles per hour." Id., at ¶ 71.

"It is further my opinion that Bridgestone was negligent in its design and lack of warning with regard to the subject tire's speed rating. Specifically, it did not state the speed rating on the tire sidewall, and it did not design a tire that could be safely driven at the posted speed limit and/or the speed capability of the semitractors on which it was being fitted." Id, ¶ 77.

Mr. Carlson also states, "Although my experience and education qualifies me to offer these opinions, the opinions regarding the duty of Bridgestone to warn consumers of the danger of driving a tire over the speed rating is one of common sense." Id. ¶ 72.

Mr. Carlson is eminently qualified to offer his opinions, and those opinions are the product of reliable principles and methods. Courts have recognized that often times *Daubert* motions are used as a disguise to exclude testimony that is simply hurtful to the opposing party. "In many *[Daubert]* motions, arguments couched in terms of sufficiency of the data, or reliability of methodology, in reality were assertions that [the] court should reject certain data-facts, of course-in favor of others." *In re Southeastern Milk Antitrust Litigation*, 2010 WL 5102974, 1 (E.D.Tenn.) (2010). That is exactly the situation before this Court. Bridgestone and

Commercial Tire have moved to exclude Mr. Carlson's opinions simply because his conclusions hurt its defense. However, such a rationale for excluding an opposing party's expert is neither supported by Wyoming law, nor authorized under any *Daubert* analysis.

## CONCLUSION

As demonstrated above, and as more fully documented in Mr. Carlson's *Affidavit,* the *Daubert* calculus of qualifications and reliability is more than satisfied by Mr. Carlson's extensive training, experience, expertise and methodology as applied to his tire failure analysis of the subject tire in the instance case. For the foregoing reasons, Plaintiff respectfully requests that *Bridgestone Americas Tire Operations*, and *Commercial Tire, Inc. Motion to Limit Testimony of Dennis Carlson* be denied, with prejudice.

Dated this 16th day of September, 2016.

Diana Rhodes, Esq.
Traci Rivinus, Esq.
THE RHODES LAW FIRM
2015 Warren Avenue
Cheyenne, Wyoming 82001
Phone (307) 634-4444

Sean J. Gamble, #41733
Richard H. Friedman, #30626
Friedman/Rubin
51 University Street, Suite 201
Seattle, WA 98101
Telephone: 206.501.4446

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that the foregoing document was filed via CM/ECF and I served a true and correct copy of same upon the entity or entities named below via CM/ECF on this 16th day of September, 2016.

| | |
|---|---|
| Monty L. Barnett<br>Grant R. Curry<br>White and Steele, PC<br>600 Seventeenth Street, Ste. 600N<br>Denver, CO 80202<br>mbarnett@wsteele.com | Marc R. Brosseau<br>Chad M. Lieberman<br>Brosseau Bartlett Seserman, LLC<br>6455 S. Yosemite St., Ste. 750<br>Greenwood Village, CO 80111<br>mbrosseau@bbs-legal.com<br>clieberman@bbsj-legal.com |
| J. Kent Rutledge<br>Peter Howard<br>Lathrop & Rutledge, PC<br>1920 Thomes Ave., Ste. 500<br>PO Box 4068<br>Cheyenne, WY 82003-4068<br>krutledge@lr-law.org<br>phoward@lr-law.org | Colin P. Smith<br>Robert E. Tonn<br>Holland & Knight, LLP<br>131 S. Dearborn St., Ste. 3000<br>Chicago, IL 60603<br>robert.tonn@hklaw.com<br>colin.smith@hklaw.com |

/s/ Stephen Bell