J. Kent Rutledge, #5-1392
Corinne E. Rutledge, #5-2480
Peter F. Howard, #7-5325
LATHROP & RUTLEDGE, P.C.
1920 Thomes Ave., Suite 500
P.O. Box 4068
Cheyenne, WY 82003-4068
307-632-0554
307-635-4502 (Fax)

Marc R. Brosseau
Chad M. Lieberman
BROSSEAU BARTLETT SESERMAN, LLC
6455 South Yosemite Street, Suite 750
Greenwood Village, CO 80111
303-515-2480
303-812-1212 (fax)

Colin P. Smith
Robert E. Tonn
HOLLAND & KNIGHT, LLP
131 South Dearborn Street, Suite 3000
Chicago, IL 60603
312-578-6562
312-578-6666 (fax)
*Attorneys for Defendant Bridgestone Americas
Tire Operations, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| **Brian Kehler,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 15-CV-127-J** |
| | ) | |
| **Bridgestone Americas Tire Operations LLC,** | ) | |
| **Commercial Tire, Inc., and John Doe** | ) | |
| **Corporations/Entities 1-3,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

### DEFENDANT BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S EXEMPLARY DAMAGES CLAIM

---

Plaintiff's response to BATO's motion for summary judgment on punitive damages asks

the Court to ignore both the plain language of his complaint and his obligation under settled

federal law to plead facts. Moreover, it suggests the Court should permit an unpleaded and unarticulated punitive damages claim to proceed in this case, without the defendants having any opportunity to take discovery on that claim, prepare a defense to it, or file motions with respect to it. The Court should reject these untenable positions and grant summary judgment.

1.   **Plaintiff Effectively Concedes Summary Judgment is Appropriate as to the Claim Actually Pleaded**

As noted in BATO's motion, Plaintiff's punitive damages claim appears in the count in his Amended Complaint labeled "Reckless Indifference of Bridgestone - Exemplary Damages." The allegations of that count premise the punitive damages claim entirely on BATO not replacing the tire at issue in this case after the prior failure of the companion right front tire. Plaintiff bases his contention that BATO was "reckless, willful and wanton and demonstrated indifference" solely on the failure of Bridgestone to have a system that would have replaced both steer tires after the failure of the right front tire.  (Amended Complaint [Doc. 8], ¶ 42).  He pleaded no facts that would support a punitive damages claim as to any other issue.

Plaintiff does not even bother to contest any facts material to BATO's motion as to the claim as actually pleaded.  He does not dispute the fact that BATO was not notified of and had no awareness of the supposed failure and return of the right front tire to Commercial Tire, and offers no facts or evidence to challenge that point.  Plaintiff similarly does not contest that absent such awareness BATO could not have had any mental state sufficient for punitive damages under Wyoming law as to the allegations regarding the right front tire and what could have happened thereafter.

Instead, Plaintiff effectively contends, without articulating any facts, that BATO should be charged with omniscience.  But this claim cannot be saved with the naked assertions in

Plaintiff's response that "Bridgestone should have had knowledge of the failed right front R283 tire" or that "Bridgestone should not be able to argue lack of knowledge to avoid punitive damages when any lack of knowledge is due to its own system failures." [Doc. 164, p. 17]. The simple fact is that Plaintiff presents no evidence of any "system failure." The undisputed evidence is that the tire was entirely outside BATO's control and in the exclusive control of one or the other of several third parties (Mr. Kehler, his employer CLR, or Commercial Tire). Simply put, none of these parties got the tire to BATO for evaluation or entered the return into BATO's warranty system so BATO would have knowledge of the return. There is absolutely no evidence to the contrary.

2.     **Plaintiff's Late Attempt to Assert an Alternate and Unpleaded Punitive Theory is Contrary to Law**

The vast majority of Plaintiff's response is dedicated to asking the Court to sidestep the punitive damages issues actually presented by his Amended Complaint, and to instead decline summary judgment on different and unpleaded factual contentions. In his pursuit of this attempt to move the goalposts mid-game, Plaintiff misstates the applicable law and dramatically misrepresents the facts of record in this case.

Ignoring the punitive damages claim as pled in the Amended Complaint, Plaintiff contends that this Court should now consider multiple theories for punitive damages that are not even hinted at in his complaint. He asserts that because he has intoned the words "reckless, willful, wanton and indifferent" in Paragraph 71 in the section of his Amended Complaint labeled "Prayer for Relief - Damages," he need do no more to assert a right to punitive damages. Citing multiple pre-*Twombly/Iqbal* cases, he states, "conclusory pleading for punitive damages is sufficient." [Doc. 164, p. 15]. That, however, is not the current state of the law.

The parallel decisions of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), swept away prior law and held that defendants are entitled to factual pleadings that place them on notice of plausible claims against them.   As the Supreme Court noted, a plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

This principle plainly applies to punitive damages claims.  "It is well settled that a claim for punitive damages may be challenged as insufficiently pled under *Iqbal* and *Twombly*." *Hook v. Whiting Door Manufacturing Corp.*, No. 3:15-281, 2016 WL 3676812, at *3 (W.D. Pa. July 6, 2016) ("allegations regarding the request for punitive damages are conclusory statements and not factual averments sufficient to state a plausible claim for relief."); *see also MCI Communications Services, Inc. v. Security Paving Company, Inc.*, No. 1:15-CV-01940, 2016 WL 1436521, at *4 (E.D. Cal. Apr. 12, 2016) (acknowledging the "trend towards heightened pleading standards in federal court" and applying the standards expressed in *Twombly* and *Iqbal* to plaintiff's request for punitive damages); *Boring v. Google Inc.*, 362 Fed. Appx. 273, 283 (3d Cir. 2010) (punitive damages claim insufficient where the complaint did not have the factual foundation required under *Twombly* and *Iqbal*).  Furthermore, contrary to Plaintiff's contention, a bald assertion that the defendant's conduct was willful and reckless is insufficient because it fails to satisfy the pleading standards of *Twombly* and *Iqbal*. *See Clemens v. Protection One, Inc.*, No. 09cv1424, 2010 WL 1445173, at *3 (S.D. Cal. Apr. 12, 2010). A plaintiff must allege sufficient "factual information to plausibly suggest the requisite state of mind." *Shukh v. Seagate Technology*, LLC, 873 F. Supp. 2d 1087, 1092 (D. Minn. 2012) (dismissing plaintiff's request for punitive damages where the "allegations are insufficient to allow the fact-finder reasonably to draw the conclusion

- 4 -

that Seagate discriminated or retaliated against Shukh with malice or reckless indifference")
(internal quotations omitted).

Moreover, to the extent Plaintiff has attempted to use his response to BATO's motion for
summary judgment as a vehicle to amend his complaint, his efforts are contrary to law and
should be rejected. *See, e.g. Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.
1990) (claim raised not in amended complaint, but rather in plaintiff's response to defendant's
motion for summary judgment was not properly before the court); *Thompson v. City of Shawnee,
Oklahoma*, 2010 WL 5376344, at *3 (W.D. Okl. Dec. 21, 2010) (rejecting plaintiff's attempt to
allege new facts in support of his claim at the summary judgment stage, "the claim must fail as it
was not pleaded or otherwise raised prior to the Response to Defendants' motion (for summary
judgment)."

Plaintiff's contention that he was not obliged to plead facts to support his new, alternate
punitive damages theories amounts to a concession that he has not done so. These theories were
never competently asserted and are not in the case. The Court should disregard these claims.

3.    **Plaintiff's Late Assertion of the Alternative and Unpleaded Punitive Theory is
      Prejudicial to the Defendants**

BATO would be severely prejudiced if Plaintiff is permitted to so significantly recast his
punitive damages case at this late date, after the close of discovery, after the time by which
BATO could move for judgment on his claim, and not through an amendment to the complaint
but rather in opposition to a motion for summary judgment. *See Evans v. McDonald's Corp.* 936
F.2d 1087, 1091 (10th Cir. 1991) (finding defendant would be substantially prejudiced if plaintiff
were permitted to present new theory on a claim not set forth in her complaint at the summary
judgment stage); *Strich v. U.S.*, 793 F. Supp. 2d 1238, 1242, n. 5 (D. Colo. 2011) ("the Federal

Rules of Civil Procedure do not permit a party to raise new claims at the summary judgment stage as it may cause prejudice to the opposing party").

**4.    Plaintiff's Alternative and Unpleaded Punitive Theory is Premised on Dramatic Misrepresentations of the Record**

Even beyond the pleading defects and prejudicial lateness of Plaintiff's new, alternative punitive damages theories, those claims must be disregarded as factually groundless. While Plaintiff's attempt to rearticulate the punitive damage theory actually pleaded is contrary to law, BATO is compelled to point out the numerous factual errors contained in Plaintiff's response – even if, as BATO contends, those facts are immaterial to the determination of its motion. Indeed, virtually every essential concept upon which these new claims are based is nothing more than an outright misstatement of the record in this case.

**A.    Plaintiff misstates BATO's position about the cause of the tire failure**

Plaintiff  repeatedly misrepresents both BATO's positions and the evidence on which those positions are based. It has never been BATO's position that the tire failed simply because the Plaintiff occasionally operated it at the speed limit of 80 mph that exists in some locations in Wyoming and a few other states. Instead, BATO's position about the cause of the failure of the tire,  as clearly articulated by its tire expert, is that the tire failed because it had a long history of operation in a significantly underinflated condition, while also being stressed by excessive speed and damage from a road hazard impact.  (Exhibit 1, Feb. 9, 2016 Deposition of Brian Queiser, pp. 196-98, 333-36).  And with respect to speed, no one has contended that the Plaintiff and his co-driver simply drove the speed limit, which occasionally involved some 80 mph driving in a few states.  Instead, the clear evidence in this case, shown by the recorded EDR (black box) and GPS data for the Freightliner tractor and corroborated by the testimony of both Mr. Kehler and his co-driver, is that the vehicle was consistently and repeatedly driven for extended periods

above speed limits, above 75 mph, and in fact frequently in excess of 85 mph. (Expert Report of Joseph Grant [Doc. 65-1], p. 13).

**B.      Plaintiff misrepresents the safety margin built into the tire's speed capability**

Apparently believing that if a misrepresentation is repeated often enough it will effectively become fact, Plaintiff states over and over that the subject tire would inevitably fail if driven at any speed at or above 75 mph. There is not only no competent evidence[1] supporting this contention, it is contradicted by an avalanche of record evidence.  Moreover, as BATO has repeatedly noted, there is no tire on the road today made by any manufacture for use on the subject Freightliner tractor with a speed restriction higher than 75 mph.

The fact of the matter is that the tire in this case was designed and tested so that it would have substantial safety margin above its 75 mph speed restriction. For example, the BATO UTBR high speed test data produced in discovery shows that the tire reached speeds substantially above 80 mph in very severe laboratory testing that equates to much higher road speeds. (Exh. 1, pp. 211-12).  The testing was, in fact, to high speed standards that were then not even yet adopted by the federal government.  (*Id.*).  And, as the ASTM standards making body has determined, that laboratory testing "has been found to be equivalent to real world speeds that are much higher." (*Id.*, p. 212).

**C.      Tire Failure is not Necessarily an Indication of Defect**

Although the Plaintiff would have this Court believe that any tire failure is automatically an indication of tire defect, the record in this case demonstrates the opposite. In fact, tire failures are most commonly the result of misuse, lack of maintenance, for some form of damage inflicted

---

[1]Plaintiff cites to the deposition testimony of Commercial Tire salesman, Damian Sokol, as the sole "evidence" on this point.  As BATO explained in detail in its Response to Plaintiff's Motion to Amend Complaint [Doc. 128]. Sokol has no training, education or experience on which to base such a statement, and indeed clearly indicated in his testimony that he was speculating.

on the tire in service. This is reflected not only in the expert reports and testimony in this case (Exh. 1, pp. 92-93; Expert Report of Brian Queiser [Doc. 65-2], p. 19), but also in BATO's extensive warnings both on the tire and in its product literature. (See discussion in BATO's Response to Plaintiff's Motion to Amend [Doc. 128], pp. 5-6). The causes of such failures include underinflation, overload, excessive speed, and damages from punctures and road hazard impacts. [Doc. 65-2, p. 19]. Plaintiff has quoted out of context BATO employee Brian Queiser's testimony on this subject, but his complete testimony is telling:

> I wouldn't call these defects. I mean, it is very common for tires to fail in use, I hate to say it. It is actually increasingly less common, but nonetheless, tire failures in the field occur on every product. Everybody, every tire is subject to use and misuse and damage and things of that nature that cause tire failures, including tread/belt detachments. That is a common failure mode. It doesn't occur to every – it doesn't occur all that much, it occurs less and less and less as time has gone on, as products, both tires and the vehicles and the drivers and the roads have all matured over the last decades. But nonetheless, it is common failure mode. But that is why we monitor it, though, that is why we monitor all of our returns.

(Exhibit 2, July 24, 2015 Deposition of Brian Queiser, pp. 171-72).

Thus the mere fact that BATO was advised of reports of failures or other issues involving R283 tires, as Plaintiff notes, is not material to anything. Tire failures are normal and expected in every tire type and line. As Mr. Queiser notes, BATO in fact actively monitors and seeks out information regarding tires returned in its warranty and claims processes. (Exhibit 3, Deposition of James Kiriazes, pp. 212-13). The record in this case is replete with testimony regarding BATO's monitoring system and its analysis of that data. (*See, e.g.,* Exh. 3, pp. 28-45, 54-60, 213-221). That data repeatedly demonstrated the performance of the subject 14-ply 295/75R22.5 R283 tire to be within the normal expectations. (Exh. 1, p. 303).

**D.      The 16-ply and 14-Ply Tires are not "Essentially the Same"**

Throughout his brief, Plaintiff cavalierly commingles evidence about two distinctly different products – the 16-ply and 14-ply 295/75R22.5 R283 tire models. Plaintiff blithely passes off this mixing with a citation-free footnote at page 7 of his memorandum stating: "According to testimony of Bridgestone employees, and Bridgestone documents produced in discovery, the 14-ply and the 16-ply are essentially the same tire." This is not remotely accurate.

The motivation behind this tactic is obvious and simple. The 16-ply tire experienced elevated claim and warranty return performance that caused BATO to investigate and evaluate it in depth; the 14-ply, by contrast, performed normally.  (Exh. 1, pp. 302-03).  The Plaintiff would plainly like to ignore the good performance of the 14-ply tire and misdirect the Court's attention to a different tire that had different field performance.

That different field performance is the ultimate, "proof in the pudding" demonstration that these two tire types are not the same.  Further, they are simply not the same design; the 16-ply tire is different with respect to its belt package, which is the focus of the failure causation issues in this case.  Finally, they are products intended for very different vehicle, load, and inflation applications.  (*Id*.).  The 16-ply tire is intended for heavier vehicles and accommodates almost 1,000 pounds more load (more than 15% greater) at higher inflation pressures.  (Exhibit 4, Bates 1570000465).

**E.      Plaintiff misrepresents BATO's analysis of R283 issues**

Using a mishmash of unrelated documents, some not even relating to R283 tires and many relating to the different 16-ply tire, and several of which are incomplete and taken out of context, Plaintiff suggests that BATO was aware of problems with the 14-ply 295/75R22.5 R283 tire design or its manufacturing process. The documents, however, do not remotely say what

Plaintiff suggests and do not stand for the propositions advanced. Many of the documents are nothing more than hypotheses BATO considered and ruled out in its careful assessment and monitoring process. For example, Plaintiff's Exhibit 12 reports a "current status" of customers experiencing problems despite intended use of the tire. But as BATO employee James Kiriazes clearly testified, that preliminary hypothesis was disproved by investigation, and "what was reported to us turned out not to be factual" with respect to the loads on the tires and the speeds at which the vehicles were operated. (Exh. 3, pp. 287-88). Other exhibits relied on by Plaintiff only recount issues investigated (Pl. Exh. 13) or confirm that failed tires were misused. (Pl. Exh. 14, which shows that failed tires exhibited accelerated degradation due to heat, such as that caused by overdeflection or excessive speed). Still others affirmatively rule out the hypotheses Plaintiff suggests were known causes. (Pl. Exh. 16B, "Defense groove tear doesn't appear to contribute to the removals we have seen."; Pl. Exh. 19, "routine monitoring testing shows that Warren [plant] compounds are looking stable without trends.").

The fact of the matter is that these documents, when examined closely and in proper context, only further demonstrate BATO's good faith and due care with respect to the product at issue in this litigation.

## 5.    Conclusion

BATO asks for summary judgment on the punitive damages claim Plaintiff actually pleaded and pursued throughout discovery in this case. There is no genuine dispute as to any fact material to that issue. Further, the Court should disregard Plaintiff's attempt to make the punitive damage claim a moving target as improper under law and unfairly prejudicial to the defendants in this action.

Dated this 3rd day of October, 2016.

<div style="margin-left:40%">

Defendant Bridgestone Americas Tire Operations, LLC

By:  <u>/s/ Colin P. Smith</u>_____
        Colin P. Smith
        Robert E. Tonn
        HOLLAND & KNIGHT, LLP
        131 S. Dearborn Street, 30th Floor
        Chicago, IL  60603
        colin.smith@hklaw.com
        robert.tonn@hklaw.com

</div>

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing was served via CM/ECF on this 3rd day of October, 2016 upon the following parties:

Diana Rhodes
Traci Rivinus
The Rhodes Law Firm
2015 Warren Ave.
Cheyenne, WY 82001
Phone:  (307) 634-4444
Fax:  (307) 222-0280
Email:  diana@drhodeslaw.com
        traci@drhodeslaw.com

Richard Friedman
Sean Gamble
Friedman/Rubin
51 University Street, Suite 201
Seattle, WA  98101
Phone:  (206) 501-4446
Fax:  (206) 623-0794
Email:  rfriedman@friedmanrubin.com
        sgamble@friedmanrubin.com

*Attorneys for Plaintiff*

Monty Barnett
Grant Curry
White & Steele, P.C.
Dominion Towers, North Tower
600 17th Street, Suite 600N
Denver, CO  80202
Phone:  (303) 296-2828
Fax:  (303) 296-3131
Email:  mbarnett@wsteele.com
        gcurry@wsteele.com

*Attorneys for Defendant Commercial Tire, Inc.*

/s/Colin P. Smith_____