# EXHIBIT 2

```
                                    1
IN THE UNITED STATES DISTRICT COURT
      FOR THE DISTRICT OF WYOMING
              - - -
ALODIE GOODEN, as           )
Wrongful Death              )
Representative of           )
TANYA GOODEN and            )  CASE NO. 15-CV-45-S
CAMERON GOODEN,             )
         Plaintiff,         )  VIDEOTAPED DEPOSITION
    vs.                     )  OF BRIAN J. QUEISER
BRIDGESTONE AMERICAS        )  TAKEN 7/24/2015
TIRE OPERATIONS, LLC;       )
FEDEX GROUND PACKAGE        )
SYSTEM, INC.; and JOHN      )
DOE                         )
CORPORATION/ENTITIES        )
1-3,                        )
         Defendants.        )
              - - -
GINA CUBILLOS, as           )
Wrongful Death              )
Representative of the       )
ESTATE OF JAMES EDNIE,      )  CASE NO. 15-CV-50-S
         Plaintiff,         )
    vs.                     )
```

```
                                    2
 1   BRIDGESTONE AMERICAS        )
 2   TIRE OPERATIONS, LLC        )
 3   f/k/a                       )
 4   BRIDGESTONE/FIRESTONE       )
 5   NORTH AMERICAN TIRE,        )
 6   LLC; BRIDGESTONE            )
 7   AMERICAS, INC.;             )
 8   BRIDGESTONE RETAIL          )
 9   OPERATIONS, LLC; FEDEX      )
10   GROUND PACKAGE SYSTEM,      )
11   INC., and JOHN DOE          )
12   CORPORATIONS/ENTITIES       )
13   1-3,                        )
14          Defendants.          )
15              - - -
16         Videotaped deposition of BRIAN J. QUEISER,
17   a witness herein, called by the Plaintiffs for
18   Examination pursuant to the Federal Rules of
19   Civil Procedure, taken before me, the
20   undersigned, Binnie Purser Martino, a Registered
21   Diplomate Reporter, Certified Realtime Reporter
22   and Notary Public in and for the State of Ohio,
23   pursuant to Notice and agreement of counsel at
24   the Sheraton Suites, 1989 Front Street, Cuyahoga
25   Falls, Ohio, on Friday, the 24th day of July,
```

```
                                                    3
 1   2015, commencing at 8:00 o'clock a.m.
 2            - - -
 3   APPEARANCES:
 4
 5   On Behalf of the Plaintiff Alodie Gooden:
 6        THE FITZGERALD LAW FIRM
 7        BY:  James E. Fitzgerald, Attorney at Law
 8             2108 Warren Avenue
 9             Cheyenne, Wyoming 82001
10             307/634-4000
11             jim@fitzgeraldlaw.com
12
13   On Behalf of the Plaintiff Gina Cubillos:
14        KLINE, McCORKLE & PILGER
15        BY:  Stephen H. Kline, Attorney at Law
16             P.O. Box 1938
17             Cheyenne, Wyoming 82003
18             307/778-7056
19             steve@kmplaw.net
20
21
22
23
24
25
```

```
                                                    4
 1   APPEARANCES (Continued):
 2
 3   On Behalf of the Defendants Bridgestone
 4   Americas Tire Operations, LLC f/k/a
 5   Bridgestone/Firestone North American Tire,
 6   LLC; Bridgestone Americas, Inc. And
 7   Bridgestone Retail Operations, LLC:
 8        HOLLAND & KNIGHT
 9        BY:  Colin P. Smith, Attorney at Law
10             131 S. Dearborn Street
11             30th Floor
12             Chicago, Illinois 60603
13             312/263-3600
14             colin.smith@hklaw.com
15
16   On Behalf of Defendant FedEx Ground Package
17   System, Inc., via telephone:
18        MURANE & BOSTWICK, LLC
19        BY:  Loyd E. Smith, Attorney at Law
20             508 W. 27th Street
21             Cheyenne, Wyoming 82001
22             307/634-7500
23             les@murane.com
24   ALSO PRESENT:
25        Jimmy Torok, Videographer
```

Page 5

```
 1                INDEX
 2
 3
 4    EXAMINATION (BY MR. FITZGERALD)        6
 5    EXAMINATION (BY MR. KLINE)           164
 6    EXAMINATION (BY MR. LOYD SMITH)      185
 7    FURTHER EXAMINATION                  188
 8    (BY MR. FITZGERALD)
 9
10
11    Plaintiff's Exhibit 1         6
12    Plaintiff's Exhibits 2 and 3  8
13    Plaintiff's Exhibit 4        20
14    Plaintiff's Exhibit 5        78
```

Page 6

```
 1              BRIAN J. QUEISER
 2    of lawful age, a witness herein, having been
 3    first duly sworn, as hereinafter certified,
 4    deposed and said as follows:
 5                EXAMINATION
 6         (Thereupon, Plaintiff's Exhibit 1
 7          of the B.J. Queiser deposition
 8          was marked for purposes of
 9          identification.)
10         THE VIDEOGRAPHER: We are on the
11    record.
12    BY MR. FITZGERALD:
13    Q. Please give us your name.
14    A. Hi. It is Brian J. Queiser.
15    Q. How are you employed?
16    A. An engineer for Bridgestone Americas,
17    Incorporated.
18    Q. What kind of engineer?
19    A. I am Director of Product Analysis
20    Department. I am essentially a mechanical
21    engineer or a tire engineer.
22    Q. Okay. Well, this is the deposition of
23    Bridgestone Americas Tire Operations pursuant to
24    Rule 30(b)(6). And have you given a 30(b)(6)
25    deposition before?
```

Page 7

```
 1    A. Yes.
 2    Q. What did you do to prepare for this
 3    deposition?
 4    A. In the last couple of days, I have met with
 5    Mr. Smith either on the phone or in person, met
 6    with some other personnel of the Bridgestone
 7    Americas Law Department, and an individual
 8    from -- by phone, an individual from one of our
 9    factories.
10    Q. Okay. Did you review any documents?
11    A. I did. I reviewed this notice that you
12    marked here.
13    Q. It is Exhibit 1?
14    A. Right. And it has some attachments that I
15    also looked at. And I looked at some documents
16    that were produced to you in the last couple of
17    days.
18    Q. Okay.
19    A. That is really about it, frankly.
20    Q. All right. So our first question -- and I
21    need to tell you that we will do our best to go
22    more or less in order.
23    A. Okay.
24    Q. But I may jump, from time to time, to talk
25    about particular topics, which may be spread
```

Page 8

```
 1    over a number of paragraphs.
 2    A. Sure.
 3    Q. Okay. So this Commercial Tire invoice,
 4    actually, there are two of them. And we will
 5    mark one of these as 2 and the next one as 3.
 6         (Thereupon, Plaintiff's Exhibits 2
 7          and 3 of the B.J. Queiser deposition
 8          were marked for purposes of
 9          identification.)
10    BY MR. FITZGERALD:
11    Q. For Number 2, let me direct your attention
12    to where it says unit number. What is the unit
13    number you are seeing there?
14         MR. LOYD SMITH: Jim, this is Loyd.
15    Could you give us a Bates number or something to
16    refer to?
17         MR. FITZGERALD: It is a Commercial
18    Tire invoice. I was just going to have him
19    identify the unit number and then we will all be
20    able to tell. And I will give you whatever more
21    information you need as soon as we have that.
22         MR. LOYD SMITH: Thank you.
23    BY MR. FITZGERALD:
24    Q. Do you see the unit number there?
25    A. I am looking at number 2?
```

## Page 169

1  individual tires are not traceable through the
2  chain of distribution.
3      If it ping-pongs off of three or four
4  distributors, before it gets to them, we would
5  never know that.
6  **Q.** And you might get it back at the end of its
7  life for some kind of recycling. But other than
8  that, you might never --
9  **A.** We don't -- sorry.
10 **Q.** Go ahead.
11 **A.** We don't do that ourselves. We promote
12 that. We promote sustainable, you know,
13 reasonable reuse of our product.
14     If it is getting recycled or otherwise
15 reused, that tends to be done by third parties
16 who are in that business.
17 **Q.** Does Bridgestone do retreading?
18 **A.** Bridgestone has a retread manufacturer, we
19 make retread materials. And Bridgestone
20 Americas does have a Commercial Tire servicing
21 entity called GCR that -- it is essentially, I
22 don't want to assume too much, but it is
23 essentially like Commercial Tire, where they
24 sell and service tires and vehicles and GCR
25 entities do retreading.

## Page 170

1  **Q.** So if a claim is made, and let's say, using
2  a hypothetical, there is more than one tire with
3  the same kind of problem, or more than one
4  client that brings back a tire with a specific
5  problem, how does -- what records are there that
6  Bridgestone has that assimilates those types of
7  problems, you know, makes it so that you know
8  that there is a problem with a batch or --
9  **A.** Okay. Well, that is a good question. But
10 we have already talked about the essence of it.
11 Data that comes back to us, that we consider
12 product performance information or data,
13 includes adjustments, claims and lawsuit
14 information.
15     So adjustment data, we consider that to be
16 a free -- in fact, it is really the tire
17 industry considers that historically to be sort
18 of the pulse of the product in the field.
19 Because adjustments are generated by real world
20 use, and they flow back to tire manufacturers on
21 a fairly time, I want to say, in a timely
22 fashion.
23     People make requests for an adjustment, we
24 get that tire, or lay eyes on it, hands on it
25 and enter it into our database in a fairly

## Page 171

1  timely fashion.
2      And when we accumulate that information in
3  our database, we utilize it to monitor how it is
4  doing. That includes all kinds of things, like
5  how it looks, how it rides, how it wears and
6  whether it fails and why it fails, or what types
7  of failure modes there are.
8  **Q.** So there is a number of different search
9  categories you can enter to get a product defect
10 kind of a response?
11 **A.** I wouldn't call these defects. I mean, it
12 is very common for tires to fail in use, I hate
13 to say it. It is actually increasingly less
14 common, but nonetheless, tire failures in the
15 field occur on every product. Everybody, every
16 tire is subject to use and misuse and damage and
17 things of that nature that cause tire failures,
18 including tread/belt detachments. That is a
19 common failure mode. It doesn't occur to
20 every -- it doesn't occur all that much, it
21 occurs less and less and less as time has gone
22 on, as products, both tires and the vehicles and
23 the drivers and the roads have all matured over
24 the last decades. But nonetheless, it is a
25 common failure mode. But that is why we monitor

## Page 172

1  it, though, that is why we monitor all of our
2  returns.
3  **Q.** Is there a title of whoever it is who
4  monitors that?
5  **A.** No. It is a responsibility of the
6  Corporate Quality Assurance Department, division
7  or department. A number of people are part of
8  that process.
9  **Q.** So let me use a hypothetical here. I am
10 assuming that these tires have a speed rating
11 beyond which they shouldn't be driven for any
12 length of time?
13 **A.** We have a recommended speed capability for
14 it, yes.
15 **Q.** Okay. Let's take the R283. Can you tell
16 me what that is?
17 **A.** I believe it is 75 miles an hour.
18 **Q.** So if a tire comes back to you with some
19 kind of a claim or adjustment request, and
20 somebody eyeballs it and determines maybe that
21 the problem with the tire was that it was driven
22 too fast over a period of time --
23 **A.** Okay.
24 **Q.** -- how would you, how would I request the
25 kind -- those kinds of records, that

```
                                    193
 1           C E R T I F I C A T E
 2
       STATE OF OHIO, )
 3              ) SS:
       SUMMIT COUNTY, )
 4
          I, Binnie Purser Martino, a Registered
 5     Diplomate Reporter, Certified Realtime Reporter
       and Notary Public within and for the State of
 6     Ohio, duly commissioned and qualified, do hereby
       certify that the within-named witness, BRIAN J.
 7     QUEISER, was by me first duly sworn to testify
       the truth, the whole truth and nothing but the
 8     truth in the cause aforesaid; that the testimony
       then given by him was by me reduced to Stenotype
 9     in the presence of said witness, afterwards
       prepared and produced by means of Computer-Aided
10     Transcription and that the foregoing is a true
       and correct transcript of the testimony so given
11     by him as aforesaid.
          I do further certify that this deposition
12     was taken at the time and place in the
       foregoing caption specified, and was completed
13     without adjournment.
          I do further certify that I am not a
14     relative, employee of or attorney for any party
       or counsel, or otherwise financially interested
15     in this action.
          I do further certify that I am not, nor is
16     the court reporting firm with which I am
       affiliated, under a contract as defined in Civil
17     Rule 28(D).
          IN WITNESS WHEREOF, I have hereunto set my
18     hand and affixed my seal of office at Akron,
       Ohio on this 29th day of July, 2015.
19
20
21
22
23     _____
       Binnie Purser Martino, RDR, CRR
24
       My commission expires June 25, 2019.
25            - - -
```