

FILED

2:53 pm, 12/1/16

U.S. Magistrate Judge

# United States District Court

## For The District of Wyoming

BRIAN KEHLER,

       Plaintiff,

    vs.

BRIDGESTONE AMERICAS TIRE
OPERATIONS, LLC, COMMERCIAL
TIRE, INC., and JOHN DOE
CORPORATIONS/ENTITIES 1-3,

       Defendants.

Civil No. 15-CV-127-J

---

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS TO STRIKE, DOCS. 79, 100, 101, AND 103

---

This matter is before the Court on Defendants' Motions to Strike, Docs. 79, 100, 101, and 103. The Court, having carefully considered the Motions, Responses, Replies, expert designations and accompanying documents, and finds as follows:

### BACKGROUND

This case is before the Court on Plaintiff's negligence action. Plaintiff Brian Kehler was an employee of CLR Transportation and was contracted to drive a FedEx tractor trailer. On November 8, 2014, Plaintiff Brian Kehler was driving a tractor-trailer, owned and operated by FedEx, on the westbound lanes of Interstate 80 near Cheyenne, Wyoming. At the same time, a Dodge Caravan was traveling east on Interstate 80 near Cheyenne, Wyoming. Plaintiff alleges the Bridgestone tire on the FedEx truck failed causing the truck to crash through a barrier and into the eastbound lanes of Interstate 80. The FedEx truck

crashed into the Dodge Caravan, killing all three passengers.  Plaintiff claims to have also been injured in the accident.  Plaintiff seeks pecuniary and exemplary damages.

### RELEVANT LAW

District courts have broad discretion in determining the admissibility of expert testimony. *Taylor v. Copper Tire & Rubber Co.*, 130 F.3d 1395, 1397 (10th Cir. 1997).  In utilizing this discretion, the Court will first look to the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Wyoming regarding expert witness designations.  Pursuant to the federal and local rules, opposing parties are entitled to a detailed disclosure of the information that adversarial experts are relying upon in formulating their expert opinions.  Fed. R. Civ. P. 26(a)(2); U.S.D.C.L.R. 26.1(e); *Smith v. Ford Motor Co.*, 626 F.2d 784, 795-96 (10th Cir. 1980).

The proponent of the expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence.  *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592 (1993); *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141, (1999).  Rule 702 of the Federal Rules of Evidence requires:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Each expert's opinions are subject to the same standards of reliability that govern the opinions of strictly scientific experts retained for the purposes of litigation.  *See Kumho Tire Co., Ltd.*, 526 U.S. at 151 (holding *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 applies even when an expert's opinion relies on skill or experience-based

2

observation).  Rule 702 and *Daubert* require courts act as gatekeepers by ensuring all expert testimony, whether scientific, technical, or any other specialized knowledge, is both reliable and relevant.  *Kumho Tire Co., Ltd.*, 526 U.S. at 152-53.  In order to make the requisite findings the court must first determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion.  Second, the court must determine whether the expert's opinions are sufficiently reliable.  Fed. R. Evid. 702; *Kumho Tire Co.*, 526 U.S. at 152-53; *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001).  Finally, the court must determine whether the proposed expert testimony will assist the trier of fact.  Fed. R. Evid. 702.

In order to offer expert testimony, an expert's qualifications may be based on "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  It is not paramount that witnesses satisfy all of these qualifications to testify as an expert because a witness is qualified to testify as an expert so long as the witness' overall qualifications provide expertise relevant to the opinions offered.  *Id.* (Advisory Committee Notes, 2000 Amendments); *U.S. v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008) (citing *U.S. v. Dysart*, 705 F.2d 1247, 1252 (10th Cir. 1983)).  As a result, Rule 702 is to be liberally construed in that it "does not impose an 'overly rigorous' requirement of expertise, recognizing that specialized knowledge may be acquired through a broad range of experience, skills or training."  *Squires v. Goodwin,* 829 F. Supp. 2d 1041, 1048 (D. Colo. 2011) (citing *United States v. Velasquez*, 64 F.3d 844, 849 (3d Cir. 1995)).  In short, a person is qualified to offer expert testimony so long as they possess such skill, experience or knowledge so that the opinion rests on a substantial foundation that will aid the trier of fact. *Id.* (citing *LifeWise Master Funding v. Telebank*, 374 F.3d. 917, 928 (10th Cir. 2004)).

Regarding methodology and procedures under *Daubert*, a court is to find an expert opinion reliable under Rule 702 if the opinion is based on "good grounds."  *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 743 (3d Cir. 1994).  Meaning that, if the opinions are based on methods and procedures of science, they can be admissible regardless of whether the court thinks the opinions are correct.  *Id.*  The court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 744 (citing *Daubert*, 509 U.S. at 595).

Rule 702 requires the evidence or testimony presented assist "the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  "In assessing whether testimony will assist the trier of fact, district courts consider several factors, including whether the testimony is within the juror's common knowledge and experience, and whether it will usurp the juror's role of evaluating a witness's credibility." *United States v. Garcia,* 635 F.3d 472, 476–77 (10th Cir. 2011) (quoting *United States v. Rodriguez–Felix,* 450 F.3d 1117, 1123 (10th Cir. 2006)).  Any questions about whether an expert's testimony will be helpful should be resolved in favor of admissibility.  Unless there are factors requiring exclusion, such as timing or surprise, the jury is intelligent enough to decipher the helpful from what is unhelpful in its deliberations. *United States v. Gutierrez de Lopez,* 761 F.3d 1123, 1136 (10th Cir. 2014) (*quoting Robinson v. Missouri Pacific R. Co.,* 16 F.3d 1083, 1090 (10th Cir. 1994)).  Additionally, Rule 702's "helpfulness" standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.  *Daubert*, 509 U.S. at 595.  To meet the requisite connection, expert opinions must provide the underlying facts and basis of the expert's opinions.  "Opinions are valueless as evidence without exploration of the underlying facts and rationale showing the path from the facts to

4

the opinion." *United States v. R.J. Reynolds Tobacco Co.*, 416 F. Supp. 316, 325 (D.N.J. 1976).

**RULING OF THE COURT**

*Defendants' Motions to Strike the Fourth Supplemental Disclosure [Doc. 79] and to Exclude opinions of Dennis Ritchie [Doc. 101]*

On August 4, 2016, Plaintiff filed his Fourth Supplemental Expert Disclosure of Dennis Ritchie.  The supplemental disclosure contains two new reports from Mr. Ritchie.  Defendant argues the supplementations are improper and untimely.  Plaintiff argues the supplemental opinions rebut defense experts Mr. Grant and Mr. Queiser designated on July 5, 2016.  Plaintiff further argues the supplements were timely filed rebuttal opinions.  Defendant argues, contrary to Plaintiff's assertions, these topics were not addressed by Mr. Grant but were raised by defense expert Mr. Philbrick.  Defendants argue the supplements are untimely since any rebuttal testimony was due thirty days from the May 2, 2016, designation.

Mr. Richie's first supplemental report contains several opinions.  Each opinion will be addressed in turn.  Mr. Ritchie's first opinion states "[b]oth Mr. Queiser's and Mr. Grant's experience as expert witnesses fails to include commercial driver training, qualifications of drivers, safety management, vehicle controls and systems, commercial vehicle operations including an expert understanding the FMCSR's and truck transportation industry customs and practices."  Expert Report by Dennis Ritchie at 4-5, July 26, 2016.  Mr. Ritchie goes on to provide a short statement concerning Mr. Grant's and Mr. Queiser's experience.  This is not proper expert testimony.  Mr. Ritchie's testimony regarding the qualifications of other experts amounts to attacking the expert's credibility, not their substantive opinions.  *See In re*

5

*Cessna 208 Series Aircraft Prod. Liab. Litig.*, No. 05-MD-1721-KHV, 2009 WL 1649773, at *1 (D. Kan. June 9, 2009) ("In general, expert opinions which assess or critique another expert's substantive testimony are relevant, but opinions which attack an expert's credibility (*e.g.,* testimony that an expert is lying) are not.") (citations omitted).   In conducting its gatekeeping function, the Court must ensure each expert is qualified.   It is then up to the jury to make its own determination regarding methodology, to determine credibility, and to decide what weight, if any, should be attributed to the testimony.   *Cook*, 580 F. Supp. 2d at 1085.   "The credibility of witness testimony is a matter left to the jury and generally is not an appropriate subject for expert testimony." *Wilson v. Muckala*, 303 F.3d 1207, 1218 (10th Cir. 2002) (citing *United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001)).   Therefore, any testimony addressing the credibility of the opposing experts is stricken and will not be allowed.

Next, Mr. Ritchie's August 4, 2016, Addendum to Case Report offers his opinion there is a disconnect between tire manufacturers and tire dealers regarding the communication that operating commercial tires in excess of the speed rating could lead to possible tire failure.   Mr. Ritchie's opinion is based upon calls he made to a handful of commercial truck tire dealers.   Mr. Richie contacted six truck tire dealers and asked each respective sales manager about replacing his Bridgestone 295/75 R 22.5 steer tires. Although Mr. Ritchie is generally qualified to offer expert testimony in this case, his opinion regarding the alleged disconnect between tire manufacturers and tire dealers is not reliable. While there is no single determinative factor to consider when assessing the reliability of an expert's opinions, all opinions and testimony "must be properly grounded, well-reasoned, and not speculative before it may be admitted."   *Squires ex rel.*, 829 F.Supp.2d at 1050

(internal citations and quotations omitted).  Mr. Ritchie's opinion is speculative and not based on good grounds.  The opinion is based solely on his contact with six out of the hundreds if not thousands of truck tire dealers across the country.  The sample size employed by Mr. Ritchie is far too small to obtain an adequate representation of the commercial tire industry.  Additionally, while Mr. Ritchie provides the notes taken by him during his conversations with each of the six tire dealers, it is difficult to understand the entire conversation between the parties and what the resulting conversations actually show.  This opinion is based on Mr. Ritchie's largely unsupported speculation, and not on actual knowledge or data as required by Rule 702 of the Federal Rules of Civil Procedure.  Mr. Ritchie simply extrapolates the general workings of an entire industry based on nothing more than his conversations with six tire dealers.  This is insufficient to appropriately validate his opinion.  *Id.* (citing  *United States v. Frazier,* 387 F.3d 1244, 1261 (11th Cir. 2004) ("[I]t remains a basic foundation for admissibility that the [p]roposed [expert] testimony must be supported by appropriate validation.")).  Mr. Ritchie's opinion that there is a disconnect between tire manufacturers and tire dealers is supported only by the *ipse dixit* of the expert, and there is "too great an analytical gap between the data and the opinion proffered." *United States v. Harry*, 20 F. Supp. 3d 1196, 1225–26 (D.N.M. 2014).  Therefore, Mr. Ritchie's August 4, 2016, Addendum to Case Report is stricken.

Next, the Court will address the opinions and testimony offered in Mr. Ritchie's March 30, 2016, designation.  "Rule 702 does not impose an 'overly rigorous' requirement of expertise, recognizing that specialized knowledge may be acquired through a broad range of experience, skills or training.  The trial court should not exclude expert testimony simply because the court feels that the proffered witness is not the most qualified or does not have

the specialization considered most appropriate by the court." *Ross v. Rothstein*, 92 F.Supp.3D 1041, 1072–73 (D. Kan. 2015).

Much like the testimony of BATOs designated expert Mr. Philbrick, the Court finds that while Mr. Ritchie does not directly offer opinions specifically addressing accident reconstruction, vehicle dynamics, human factors, and tire science, he does utilize and incorporate these areas into his opinions. Mr. Ritchie formed his opinions based on his experience, education, training, review of pertinent documents, the available testimony and opinions provided by others, the Federal Motor Carrier Safety Rules, and industry customs and practices. Mr. Ritchie is qualified to offer this proposed testimony. Mr. Ritchie has an impressive resume, which will not be restated here but is incorporated by reference. This includes over twenty-five years of experience working in and around the commercial trucking industry. Mr. Ritchie's experience involves claims analysis, investigations, commercial driver employment, training, and operating procedure, along with dealing with Federal Regulations and industry standards.

Next, Mr. Ritchie expressly identifies the underlying basis utilized in reaching his opinions. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717. This is sufficient to satisfy the Federal Rules since a court's focus is solely on the "principles and methodologies, and not on the conclusions generated." *Vondrak v. City of Las Cruces*, 671 F. Supp. 2d 1239, 1244 (D.N.M. 2009) (citations omitted). Any disagreement with the methodology and underlying factual support does not render testimony inadmissible. Mr. Ritchie sufficiently sets forth his opinions and the corresponding basis of each opinion as required under Rule 26(a)(2)(B). This allows Defendants and Defendants' expert the ability to analyze and assess the credibility of Mr. Ritchie's findings. Defendants' concerns go to the weight of the evidence,

not its admissibility.  These concerns are best addressed through cross examination, rebuttal expert testimony, and presentation of contrary evidence since questions surrounding an expert's use of the best or most reliable methodologies are for a jury to decide.  *Cook*, 580 F. Supp. 2d at 1085.  The Court will not usurp the role of the jury by making a determination regarding the accuracy of Mr. Ritchie's findings.  Mr. Ritchie's opinions are admissible since they are based on identified principles and methodology and the Court will not make a determination as to the ultimate conclusions reached.  *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d at 742.

As a result, Mr. Ritchie will be allowed to testify as designated, with the exceptions already discussed above. Mr. Ritchie's education, training, and experience and his identified methodologies are sufficient to allow him to offer such testimony.  While Mr. Ritchie's expertise may be helpful in explaining and comparing the standards and practices in the trucking industry to Plaintiff's conduct, the jury is more than capable of drawing their own conclusion as to what caused the crash.  It is up to the discretion of the finder of fact to listen to the information presented and apply the information to the facts presented at trial.

Lastly, the Court will address opinions numbers 2, 3, and 4 contained in Mr. Ritchie's first supplemental report dated July 26, 2016.  While this is a close call and the questioned testimony does rebut the opinions of Mr. Philbrick, there is a sufficient nexus between Mr. Grant's and Mr. Quiesar's testimony to allow the rebuttal testimony.  Specifically, the topics of all the experts, including Mr. Grant, Mr. Quiesar, Mr. Philbrick, and Mr. Ritchie, are sufficiently intertwined with the commercial trucking industry to allow the rebuttal testimony.  Therefore, opinions 2, 3, and 4 of the July 26, 2016, supplemental report are allowed.

*Defendants' Motion to Limit Expert Testimony of Dennis Carlson [Doc. 100]*

Defendants seek to strike Mr. Carlson's opinions concerning alleged defects with the steel belt joints, alleged adhesion defects evidenced by liner pattern marks, and claimed deficiencies in Defendant's warnings.   Defendants assert Mr. Carlson is a professional witness who only criticizes tire manufacturers as evidenced by the numerous courts that have excluded his testimony.   Mr. Carlson opines a joint or splice in one of the tire's four steel belts is overlapped, and claims the splice caused the tire to separate.   Defendants argue this opinion is not supported by any evidence or testing, and that even Mr. Carlson himself admits the separation happened in a different level in the tire.   Next, Defendants argue Mr. Carlson's methodology used to reach the conclusion the tire exhibited poor adhesion is only supported by what he calls liner pattern marks in the steel belt rubber is without support and unrecognized by the scientific community.   Lastly, Defendants argue Mr. Carlson is not qualified to offer the opinion that Defendant's speed restriction warnings were inadequate. Defendants claim Mr. Carlson's methodology and resulting conclusions are subjective, untested, and without support from any recognized community of tire experts.   Defendants also request a Rule 104(a) hearing to further assess the issue if necessary.

In Response, Plaintiff argues the methodologies employed by Mr. Carlson are essentially the same as those utilized by all tire failure experts, and Defendants' arguments go to weight and not admissibility.   Plaintiff contends Mr. Carlson is amply qualified to testify as proposed, and argue he utilizes reliable and identified methodologies in reaching his conclusions.

To begin, Defendants' request for a hearing to further address the issues raised in the instant Motion is denied.   Local Rule 7.1(a) provides for hearings on a motion at the Court's

10

discretion, and district courts are granted "discretion to limit the information upon which it will decide the *Daubert* issue." *Ho v. Michelin N. Am., Inc.*, 520 F. App'x 658, 664 (10th Cir. 2013) (citation omitted). The Court finds no formal hearing is necessary as the parties have provided expert reports, deposition transcripts, and all necessary evidence is currently before the Court.

Next, Defendants do not seek to strike all of Mr. Carlson's testimony, only his opinions dealing with alleged defects in the steel belt joints, adhesion defects, and alleged deficiencies in warnings. Defendants also do not question Mr. Carlson's qualification to testify in general, only his qualifications regarding warnings. A careful review of Mr. Carlson's report and *curriculum vita* show he is qualified to testify generally as a tire failure expert. However, Mr. Carlson lacks the requisite knowledge, skill, experience, training or education to testify as an expert regarding tire warnings. *See Magoffe v. JLG Indus., Inc.*, No. CIV060973MCA/ACT, 2008 WL 2967653, at *22 (D.N.M. May 7, 2008) ("a witness' general credentials as an engineer do not qualify him or her to offer expert opinions about the adequacy of warnings or directions for a product, unless he or she can demonstrate other specialized knowledge regarding the communication of warnings"). "The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible." *Ralston v. Smith & Nephew Richards, Inc.,* 275 F.3d 965, 970 n. 4 (10th Cir. 2001). Mr. Carlson issued an affidavit in Response to the Motion to Strike and states that "[a]lthough my experience and education qualifies me to offer these opinions, the opinions regarding the duty of Bridgestone to warn consumers of the danger of driving a tire over the speed rating is one of common sense." Affidavit of Dennis Carlson Sept. 15, 2016, at ¶ 72, ECF No. 142-1 Sept. 16, 2016. However, in Mr. Carlson's unrefuted deposition testimony

11

he admits he is not a warnings expert, and has no experience writing or evaluating warnings. Deposition of Dennis Carlson July 12, 2016, at 219-220, Sept. 2, 2016, ECF No. 100-2.  Mr. Carlson relies upon his general expertise as a tire expert in support of his opinions regarding warnings.  This is insufficient.  Mr. Carlson lacks the necessary experience, training, or education to offer testimony regarding the sufficiency of any warnings or lack of warnings. Plaintiff's assertion of general experience fails to tie Mr. Carlson's qualifications to this particular opinion and is insufficient to carry the burden of establishing his qualifications regarding warnings.  Further, Mr. Carlson's assertion that the duty to warn regarding speed ratings is "one of common sense" supports striking this testimony since it is the duty of the jury to listen to the evidence, and then make a determination regarding the culpability of any actions or inaction.  Mr. Carlson's opinions regarding the sufficiency of and identifying alternative warning options falls outside his area of expertise and would not assist the jury.

Next, the Court will address Mr. Carlson's opinions regarding steel belt joints and adhesion defects together.  Defendants question the methodologies utilized by Mr. Carlson in reaching these two specific opinions, but do not question his general methodologies for the forensic inspection and analysis of failed tires.  The Court agrees with Defendants assertion. Mr. Carlson's general methodology in conducting the tire failure analysis is the type typically employed by other similarly situated experts and is based on good grounds. However, Mr. Carlson's opinions that the alleged "dog ear" splice and adhesion defect caused the tire to fail are not supported by good grounds.  A "dog ear" splice is an overlap in one of the tire's four steel belts.  The "dog ear" splice at issue here is in the tire's number one belt, but the tire separation here did not occur at this belt.  Rather, Mr. Carlson opines the tire separation occurred between the number 2 and 3 belts at a point nearly 90 degrees around the

tire from the "dog ear" splice.  The adhesion defect claimed by Mr. Carlson is that the tread belts exhibited reduced adhesion because of insufficient bonding during the manufacture of the tire.  Mr. Carlson states this defect is apparent by the liner pattern marks in the failure surface of the tire.  Mr. Carlson claims these two defects worked together to cause the tire failure.  Affidavit of Dennis Carlson Sept. 15, 2016, at ¶ 76, ECF No. 142-1 Sept. 16, 2016.

Mr. Carlson fails to cite any meaningful support for this assertion.  Mr. Carlson does not cite any scientific support for his opinion that the "dog ear" splice at issue could contribute to a tires separation in another belt.  Mr. Carlson does cite to studies conducted by David Southwell, an expert in a different case.  This does not constitute good grounds.  Mr. Southwell's testimony is not directly on point, and Mr. Carlson fails to show how Mr. Southwell's opinions or findings support his conclusions.  Similarly, Mr. Carlson fails to provide the requisite good grounds for his adhesion defect opinion.  Mr. Carlson cites to an article and the opinions of David Southwell, but again Plaintiff fails to identify how the cited testimony supports Mr. Carlson's opinions.

Mr. Carlson's opinions that these two defects caused the tire failure are not reliable as they lack the explanatory and necessary building blocks in support of his conclusions.  This opinion is only connected to the existing data and facts of this case by the *ipse dixit* of the expert.  *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).  Mr. Carlson has the requisite experience, education, and training to testify as an expert.  Those credentials alone however do not support the opinions in question.  Mr. Carlson fails to provide any analysis or scientifically supported methodology linking the materials reviewed to his opinions regarding the "dog ear" and adhesion defect theories to the tire separation in this case.  "[T]here is simply too great an analytical gap between the data and the opinion proffered."

*Id*.  Based on the preceding analysis, Mr. Carlson's opinions concerning alleged defects with the steel belt joints, alleged adhesion defects evidenced by liner pattern marks, and claimed deficiencies in Defendant's warnings are stricken.   Mr. Carlson may still offer expert testimony consistent with his designation not addressed in this Motion.

*Defendants' Motion to Exclude Certain Opinions of Dr. Ogden [Doc. 103]*

Plaintiff designated Dr. Jerry Ogden as an accident reconstruction expert to offer testimony regarding the factors contributing to the crash and other issues related to the crash. Defendants argue Dr. Ogden's opinions regarding an imbalanced caster and the fracture of the steering knuckle spline are not supported by any scientific basis or cognizable methodology.   While Defendants do not directly question Dr. Ogden's qualifications, the Court finds Dr. Ogden is qualified by his knowledge, experience, training, and education to offer expert testimony in this case.   Dr. Ogden has an extensive resume and is a professional engineer with over twenty-five years' experience as a forensic engineer.   Over that span Dr. Ogden has conducted numerous vehicle collision reconstructions, including investigating the failure of automotive components.   Courts have held the standard to determine whether a witness is qualified to testify as an expert should be construed and applied liberally. *See United States v. Gomez,* 67 F.3d 1515, 1526 (10th Cir. 1995).   Under that standard, Dr. Ogden is qualified to offer expert testimony as contained in his designation.   Additionally, Dr. Ogden's testimony is relevant and helpful as his knowledge, skill, and experience will help the jury understand the evidence and make determinations regarding factual issues pertinent to the claims and defenses raised in this case.   Fed. R. Evid. 702.   Namely, Dr. Ogden's testimony directly relates to Defendants assertion that even after the tire deflation Plaintiff maintained sufficient control over the tractor that he should have been able to avoid

14

the collision.

Defendants' concerns with Dr. Ogden's testimony are based in his methodology, or alleged lack thereof.  Defendants argue his identified testimony should be excluded as unreliable and untested.  District Courts maintain broad discretion in deciding "how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability." *Dodge v. Cotter Corp.,* 328 F.3d 1212, 1223 (10th Cir. 2003).  In assessing the reliability of scientific evidence the testimony must be based on valid methodology and be properly applied to the facts of the case. *Daubert*, 509 U.S. 592-593.  This "requires the judge to assess the reasoning and methodology underlying the expert's opinion, and determine whether it is scientifically valid and applicable to a particular set of facts." *Goebel v. Denver & Rio Grande Western R.R. Co.,* 215 F.3d 1083, 1087 (10th Cir. 2000).  The party offering expert testimony "need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community" rather the proponent of the expert "must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirement." *Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 781 (10th Cir. 1999) (citations omitted).  "[T]he court's 'gatekeeping' responsibilities under Rule 702 do not turn on the 'correctness' of an expert's opinions." *Squires ex rel.*, 829 F.Supp.2d 1055.  A court is to find an expert opinion reliable under Rule 702 if the opinion is based on "good grounds." *In re Paoli R.R. Yard PCB Litigation,* 35 F.3d at 743.  The party offering expert testimony "need not prove that the expert is undisputedly correct or that the expert's theory is 'generally accepted' in the scientific community" rather the proponent of the expert "must show that the method

employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirement." *Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 781 (10th Cir. 1999) (citations omitted).  The focus is solely on the "principles and methodologies, and not on the conclusions generated." *Vondrak v. City of Las Cruces*, 671 F. Supp. 2d 1239, 1244 (D.N.M. 2009) (citations omitted).

Dr. Ogden provides a detailed description of his underlying methodology in his report and in his affidavit [Doc. 153-3].  Dr. Ogden responded to the crash scene within several hours where he inspected the scene, took photographs, took measurements, and examined the physical evidence including the tractor and its steering components.  Dr. Ogden sufficiently explains his opinions regarding the alleged imbalanced caster and the fracture of the steering mechanism.  Specifically, Dr. Ogden reached his opinions by utilizing his years of education, training, and experience and applying it to the facts and evidence of this case.  Dr. Ogden asserts it is a basic engineering principal that loss of pneumatic pressure on a tire instantly changes the geometry of the steering system, and claims it is not necessary and not possible to know the exact caster angle before or after the tire deflation.  Dr. Ogden observed the physical evidence present at the scene, including the tire marks.  In reaching his opinions regarding the fracture of the steering column, Dr. Ogden analyzed all evidence available to him to try and determine the cause of the failure.  Dr. Ogden relies heavily on the documented physical evidence, namely photographs, to support his findings.  Whether his conclusions are correct or not, the clearly described methodologies of Dr. Ogden are scientifically sound and based on facts.  This is sufficient to satisfy Rule 702's reliability requirements. *Kechi Tp. V. Freightliner*, 592 Fed. Appx. 657, 671 (10th Cir. 2014)).

Defendants' concerns go to the weight of the evidence, not its admissibility.  The

Court will not usurp the role of the jury by making a determination regarding the accuracy of Dr. Ogden's findings. Defendants may cross examine and offer evidence in order to make clear any alleged deficiencies in Dr. Ogden's testimony. This allows the jury to make its own determination regarding methodology, to determine credibility, and to decide what weight, if any, should be attributed to the testimony. *Cook*, 580 F. Supp. 2d at 1085.

CONCLUSION

This case involves the interpretation of numerous factual and legal issues upon which a jury will ultimately decide. The bulk of the testimony at issue in the instant Motions is relevant and reliable, as it is based on good grounds. However, the multitude of experts creates numerous potential conflicts with Local Rule 26.1(e)(1) that limits parties to the designation of one expert to testify for each particular field of expertise. Even though each expert brings a different expertise and point of view, both parties are limited to offering one expert to testify regarding each specific topic. The parties are to make a determination as to which expert will best address their specific concerns and trial strategy since the Court will not allow an expert to testify in order to bolster, or offer the same or substantially similar testimony as any other expert. Any attempt to provide duplicative, cumulative, or other inappropriate testimony will be excluded.

The majority of the issues raised by the instant Motions are best addressed through cross examination, rebuttal expert testimony, and presentation of contrary evidence whereby the trier of fact will determine what weight, if any, should be attributed to expert opinions. Once expert testimony has been deemed reliable "it is up to the jury to decide whether the expert used the best or most reliable methodology, what weight to accord to his testimony and which of competing experts' opinions should be credited." *Cook*, 580 F. Supp. 2d at

1085.  Therefore, the Court will allow the experts to testify subject to the stated limitations. Any further rulings on individual objections are left to the sound discretion of the District Court at trial.

THEREFORE, IT IS ORDERED Defendant's Motions to Strike, Docs. 79, 100, 101, and 103 are GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that the parties proceed as outlined above.

Dated this 1st day of December, 2016.

Kelly H. Rankin
U.S. Magistrate Judge